Let's let everyone get settled. Okay Mr. Lynch. May it please the Court, Phil Lynch for Mr. Aguilar. The District Court assessed Mr. Aguilar a two-level increase under Guideline Section 2D1.1, what was then B15A for the use of affection in involving another person in the offense. The guideline calls for a defendant to get that adjustment only when he used, that's affection or some combination thereof to involve another in the offense. So the focus of the guideline is on how the person got into the offense, not whether there was another person in the offense. That's a purely factual determination for the District Judge, is that right? Yes and no. First I think the District Court maybe didn't, I think the District Court erred clearly factually and so the Court can reverse on that basis. To the extent that the District Court seems not to have focused on the fact that the verb used requires active employment, there could be illegal, but I think the question in this case really comes down to there's just no evidence that he used affection to involve another. But it's subject to the clear error standard. I mean it's a classic situation for applying the clear error standard to what the District Judge decided, isn't it? Implying the facts or the law? See I think factually, Your Honor, there's simply no evidence here. The only evidence in the record is the statement of the probation officer in the pre-sentence report that the girlfriend, Ms. Chavez-Hernandez, Chavez-Hernandez claimed that she agreed to Aguilar's request out of fear he would break up with her. That is a report of her subjective feeling. Are you saying this is, I'm very confused of your answer to Ms. Smith's question because you keep saying that well there's no evidence and if so, are you saying that it's de novo an improper application because it doesn't apply at all or are you saying it's clearly erroneous because the court looked at the whole galaxy of the facts and there was not, you know, usually in a clearly erroneous, there is some evidence to support it but you still are left with the definite and firm conviction that there's been an error made because it's so minute compared to the rest of the evidence. Yes. So which are you arguing? Are you arguing both? Primarily the clearly erroneous. Both to the extent that we need to, if at all, and we may not need to because there may not be much of a dispute. The government in its brief does not really dispute that the word used as in common parlance is actively employed. So the question for the district court factually then becomes did Mr. Aguilar actively employ affection? Well, did the court use the wrong question or ask the wrong question or did the court look at the facts wrong? I think the court, I think in this case the court simply looked at the facts wrong. I don't see anything in the transcript that tells me for certain that the district court misunderstood the guideline but I don't see anything that shows me they understood the guideline required which is something of a legal question. It requires used. So what does used mean? Actively employed. So then when we look at that, did the district court make a mistake on the facts? Yes. The district court made a mistake on the facts. There is nothing to show that Mr. Aguilar actively employed affection to induce or persuade Ms. Chavez to participate in this offense. Let me see if I understand your broad point. If it's a matter of affection, you don't test in this case the woman. You test the defendant. Correct Your Honor. What they have is evidence of what the woman after she was arrested said she felt. They do not have any evidence of anything that Mr. Aguilar said or did. Except invite her to go along. Correct. But in merely asking her to join, inviting her to go along is not using affection because you have to actively employ. The Supreme Court has told us that when you use something, you actively employ it. You make it an operative part of the offense. Simply saying, hey, come along with me, is not actively employing affection to induce her to come. But the guideline clearly focuses on how she was involved, not that she was involved. Had the guideline focused only on that she was involved, the word used wouldn't be there. It would simply say someone who involves another in an offense. But this language used, fear, affection, impulse, etc., comes not only from the guideline, but from Congress itself. It comes from Section 6.3 of the Fair Sentencing Act. It was a directive to the commission to create this guideline or one like it. The guideline, the commission used that exact language. We know from the background of all the Supreme Court cases that we trace to go back 100 years or more, Congress knows what used means. And when Congress legislates against the background of subtle interpretation and chooses a particular word, we have to give a meaning. So I think Judge Elrod, that's sort of the background. The legal is the background. But in this case, even if we all agree on what used means, there's not evidence here. As you said, Judge Wiener, all they have is her feeling. Her feeling can't be what he actively employed. If he played upon her feelings, he might have actively employed those feelings. But there's no evidence of that. There is only her post-arrest statement that she agreed out of fear he would break up with her. There's nothing to suggest he said, oh, if you loved me, you'd do this. If you really need to, oh, I'm going to be out there by myself. If there was evidence like that, he would have used affection. And that's the best case from the Third Circuit. He convinced her he loved her. He's lying. He's playing on her affections to get her, she was a pharmacist, to give him blank prescriptions, to give him pills. That's what we don't have here. So on the clear error, we have clear error. On the law, the background is what does used mean? Used means actively employed. We have nothing to suggest in this case that he actively employed affection to induce or persuade her to become involved in the offense. And for that reason, the district court erred. All right. Thank you, Mr. Lynch. You've saved time for rebuttal. Mr. Durbin. Good morning. May it please the court. How many times have you and Mr. Lynch squared off against each other? No, it's been probably 20 years, but we used to do it pretty often. He's gotten older, I haven't. It may not help me, but Judge Elrod, in answer to your question, I think at the heart of this is a question about the construction of the guideline. And Judge Weiner, your question, I think is right on point. Whose affection are we looking at? Are we looking at the defendant and some abuse of somebody's affection? Are we looking at the person who's been drawn into this? That is, in this case, Ms. Chavez, who's been drawn into this, really on this record, only because of the affection, only because of the relationship. And if you boil it all down, I mean, the appellant's argument gets down to magic words. If he'd said, oh, baby, I love you, would you come with me and pick up a dope load, we'd be okay. We wouldn't be here arguing. But the fact that she's conveniently there doesn't mean that he's improperly using her affections. That's not enough. The fact that she happens to be around because she likes him. But I think that the guideline, if you look at the guideline, this is an interesting guideline. It's because you start with, he has to be a leader. And this particular provision applies to drug trafficking. But if you look at this, I was asking myself yesterday, what is this guideline about? It's lower than the snake's belly guideline. This guy is so morally corrupt that he will use the weak, he'll use the young, he'll use the old, he'll use affection, he'll use friendship. I don't know what. Or are people using their free will and autonomy to join him in his actions? I don't think this guideline requires that we'll be overborn. It simply means that he's exploiting or taking advantage. What does he do that exploits her in this record? Well, the circumstance was he and Lujan were going to go pick up this dope load. He bought the vehicles. Lujan paid $1,000 for a driver to go along. He was going to buy, to pay a driver, and in the end he didn't. And the circumstance, sort of the background behind this, the present report says he had a chemical accident when he was 16 and was out without vision for about a year. And now he has limited vision. So they're going out to find a load. There's a blanket on the side of the road. And what he says to her, he doesn't hire the driver like he said he was going to. And he's going to save himself $1,000. So he turns to her and says, best we know, he asked her to go along. And then he directed her, you need to look for the blanket. So he was taking her for eyes. He was using her. And the relationship is what gave rise to it. He didn't go down the block and ask somebody standing on the corner, hey, would you come along with me and look for a blanket? What's the difference if he had asked somebody standing there or he asked his girlfriend? The person who is asked doesn't do anything. Well, actually, she does because of the relationship of affection. She is going to be under more pressure to agree, to say yes, to do something that she would not otherwise do. And the record's clear. Anytime people are romantically involved and they're on a crime spree together, that the leader is going to get this enhancement. No, I don't think so. I don't think this goes. What would the facts have to be for her not to get the enhancement? Well, there are some other circumstances. First of all, it has to be a minimal involvement. This is the first time she did it. I don't think Clyde gets this for asking Bonnie to go along on a bank robbery. I don't think that's what this applies to. I think best, I think the court deferred to the court of appeals, deferred to the district court, but I think best is wrong. Because the girlfriend, she provided 20 bottles of pills, 40 prescriptions over a period of over a year. She was an accomplice. She was involved in that. I think that testimony was probably him trying to minimize her because he felt bad. But I don't think that it's magical because he said, I love you, baby. Would you give me some pills? So all we're lacking in this case is he didn't say, I love you, baby. Would you come along and look for the blanket? It seems like that would have been easy to get in the record. We don't know that that's said. I don't know what people's relationship is. I mean, a really intimate relationship, a very intimate. We don't know whether he pressured her. Well, we don't know that he has to pressure her. The guideline doesn't say pressure. He has to use and be actively employing this, which is different. Why is not taking advantage of the opportunity a use? This is not a tool. Affection is not a tool. It's not something that you pick up. I mean, the gun analogy is not a very helpful analogy. A gun is a thing. It's a tool. This is a relationship. And it's a tool to accomplish his purpose. Well, and he's not a tool to accomplish his purpose. And he did. And he asked her because he needed somebody to go along. And he had that relationship with her. And they're clearly intimate. She was pregnant, although they didn't know it. I'm not suggesting that he should have, but clearly he knew that they were intimate. And the pregnancy is some evidence of that. That gives some indication. The relationship was at least a year. She was 19 years old. The government's position is that anytime the person in the relationship has not shown predisposition to criminal activity, then the leader is going to get this. Is that right? Well, I'm not good with categorical, but I think on the facts of this case, and your question goes to is did the district court misinterpret the facts in this particular case, I think on the facts of this case, a 19-year-old who has never done it before, who has no financial interest in it, has really no knowledge of the structure and the scope of the organization. And I think those are the limiting factors. And then you've got the intimate relationship, the affection relationship that's in the middle of it. I think the guideline does apply to these facts. Does the record show that she participated in anything of the drug deal? What the record shows is he asked her to look for a blanket on the side of the road where the backpackers would be. She rode with him from the Midland area out in the SUV in which he picked up the backpackers. And the statements given by the backpackers after the arrest support the inference that she was in that vehicle. She was in the load vehicle at the time they were picked up. And then on the way back toward Odessa, which was the final destination, there was a stop and she got out of the load vehicle and ended up in the sedan or the scout car. So the inference is she went across the way. She did what she was asked to do, which was to look for the blanket. There's nothing that says she spotted the blanket, but that's what she was asked to do. And she was there. And the backpackers say, yes, she was in the vehicle when they were picked up. And then there was a stop and she got out and got into the sedan. What was the financial relationship between the parties? Was she living with him and he's providing for her room and board? She makes, there is something in her statement that makes reference to she lived in an RV with her parents and behind that RV, she had seen the defendant and Lujan unload marijuana on prior occasions. And he also lived in an RV, I believe, but I don't know that it's, I can't tell the court it's the same one. I don't know that. I'm assuming that they're not. He was 21 at the time she was 19 and they'd had a relationship for about a year. She says about a year and he said it was maybe three years. It might have seemed like three years to him. I don't know if that's what the circumstance, but I mean, my bottom line is I don't think that the analogy to the gun, the active employment of a gun is really what this use goes to. I think the better conception of use in the context of the guideline for these kinds of for affection, I think it's the defendant takes advantage of it, not that the defendant says some magic words. I mean, the example that came to my mind is suppose it's a neighbor. Suppose it was his neighbor and he's helped the neighbor over the years, paint the house, watch the cats, feed the dogs, whatever it is. And on this night, he needs the neighbor's help. So he goes to the neighbor and says, would you come with me? Let's get in the car. I need you to look for a blanket. I'm going to pick up the load. And the neighbor, there's no discussion of painting the house, taking care of the cats and dogs and all that stuff. But the neighbor gets in the car and goes along and assists because he's been helped so many times. On that record, would we say, oh, no, he didn't use the friendship? He didn't use that relationship? I think he certainly did by the asking, by the existence of the relationship, by the background, and by the affirmative step of asking, would you come and help? And I think that is exploiting, taking advantage of, not necessarily misusing. Well, at least your point, I think, is that if the district judge decided that, we would not say it would meet the very steep clear error standard. I think that's right, Judge. I think that's absolutely right. That's what this all comes down to, how much latitude we give this district judge to listen to the witnesses and look at the facts and make a decision. I think that's right. And I also, I mean, I don't know how it factors in, other than having been in court, but he saw all these people. He saw both of these people because she pled guilty and she was sentenced by this judge before the defendant was sentenced. So he saw their demeanor and, I would assume, inferred something about their relationship from that. But that's a straightforward issue. But I think on this record, on these facts, the district court's finding can be upheld. I would point out, I'm sure the court's aware of it. I think what's at issue here is like five to eight months on the sentence. If the court was in error, then the top of the guideline range, as I calculated, would have been two lower. It would have been 63 months and there was a mandatory minimum. So it would have been 60 to 63 months instead of 63 to 71 or whatever, or 50 something, 58, 57 to 71. So that's what's at stake here. You don't have any more questions? Thank you, Mr. Durbin. And to both attorneys, thanks very much for the short briefs. I know a lot of lawyers think that longer is better, but you guys have had a lot of experience and you know once you've made your point that you don't have to print a bunch more pages. So we appreciate that. Yeah, I, of course, would call on you for rebuttal. Thank you, Your Honor. Yeah, no, I wasn't trying to cut you off from rebuttal. I just... If you were, I wanted to be intelligent about it. Now go sit down. This is not a magic words case. This is a, the government has a burden of proof and there's no evidence case. Judge Wiener's point is the most important one. There's no evidence about Mr. Aguilar. Now when Mr. Durbin gave you that example about the neighbor, he gave you a lot of facts, a lot of facts that we don't have to know about the relationship in this case. All we know really is he asked her. The government didn't, may not have to do a lot to... Well, we know that there was a romantic relationship and a sexual relationship and I don't understand any situation in which, absent that, it's cognizable that she would have come along to do this big favor. It just doesn't, it just doesn't add up. Well, I think the government, the guideline itself tells us that even if she was just his friend, the guideline, and this goes to Judge Alron's point about is this going to play all the time. I think it is going to play near automatically and I think the probation office is going to interpret it that way. Well, no, but it's more than just being a friend because obviously the guideline says romantic, so that, and that's here. I mean that, it's not a no evidence case because there is that evidence. The guideline says affection or friendship, but Your Honor, I do think it is, if not a no evidence case, it's certainly a insufficient, even for, this leaves me with a sense that a clear error was made. We don't know anything about them or their relationship that tells us why she would agree other than she came along. Judge Alron's point about you have free will. Mr. Durbin was, and this is where it comes back to, Mr. Lynch, you're being unclear and perhaps I was about the law and the facts, but Mr. Durbin says he'll use, he'll use, he'll use. Well, use is a term we have to go and look at what it means in the law. Congress picked use. They didn't say someone who involves a person who is a friend, a lover, et cetera, and they could have said it that way. They chose to say used. They were looking for evidence that the person played upon affection, played upon friendship. Well, if you don't have the use, then any time someone is in a personal, whether it's friendship, sexual, or whatever, the other person is going to get the count. I agree, Your Honor. And I think that is why it's important that we set a standard and say the government has to put on something more than this and that the district court erred on this very, very thin evidence. Thank you, Your Honor. All right. Thank you, Mr. Lynch, and we wish to thank you for being willing to take the appointment as you've taken many, and we appreciate your service to this client and to the court. Your case is under submission.